## Anna Borovicka, Appellant, v. Bankers Indemnity Insurance Company, Appellee.

### Gen. No. 39,216.

Opinion filed February 15, 1937. Rehearing denied March 1, 1937.

HOPKINS, STARR & GODMAN, of Chicago, for appellant; JOHN L. HOPKINS, JAMES A. SPROWL and GEORGE E. McMURRAY, all of Chicago, of counsel.

CASSELS, POTTER & BENTLEY and HINSHAW & CULBERTSON, all of Chicago, for appellee; RALPH F. POTTER and GEORGE C. BUNGE, both of Chicago, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff, as beneficiary in an accident policy issued by defendant to her husband, brought suit alleging the accidental death of the insured; upon trial the jury returned a verdict for $5,000 with interest. Thereafter the court allowed defendant's motion for a directed verdict for a lesser amount and judgment was entered against defendant for $2,176; plaintiff appeals.

Defendant's position is that the insured was killed by performing a hazardous act not pertaining to his occupation as stated in his application for insurance, hence defendant is liable for $2,000 only, the amount of liability assumed in the policy for the greater hazard. Plaintiff's theory is that the insured met his death while doing an act pertaining to his occupation, hence defendant is liable for the face amount of the policy.

In the application for insurance the insured gave his occupation as florist, his duties as "counter and supervising"; that he was the owner of the Winnetka Flower Shop; that he operated an automobile; and to the question whether the automobile was operated "for business or pleasure," answered "Both."

The insured was accidentally killed May 26, 1934, when a light delivery truck he was driving overturned. The decision of this case must rest upon the interpretation and application to the facts of the following provision of the insurance policy:

"1. This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the Insured is injured after having changed

his occupation to one classified by the Company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the Company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the Company for such more hazardous occupation.''

The insured owned and conducted the business of florist, operating a greenhouse and a store in Winnetka; he did a general florist business, planting flowers, laying out and maintaining gardens at the homes of customers; the busy seasons were in the spring and fall of each year and he employed from four to 15 persons, depending on the season; the insured would arrive at his greenhouse about seven o'clock in the morning and assign his employees to their jobs for the day; he personally supervised the men in this work, marking out the line of flower beds and advising them where to place the plants; his greenhouse was about 13 miles from his store and in going to and from these points and the places where the men were working he generally used a passenger automobile; he also owned a Ford light delivery car, which was used in his business, and also a heavy dump truck. The evidence shows he never drove the heavy truck but employed a regular driver for this who had worked for him for many years; when the insured went to supervise a job he used either the sedan or the light delivery car, sometimes taking along some plants intended for the job; the driver of the truck made 95 per cent of all deliveries from the shop and 75 to 85 per cent of all deliveries to garden jobs; the insured's sons also made deliveries in the Ford car; the insured seldom made special trips to deliver goods, and then

only because of a rush order that the truck driver could not take; during the busy season the insured drove the Ford delivery car for one purpose or another as often as once a day, but only rarely during the rest of the year; this included trips to and from the nursery and from his planting jobs, with an occasional delivery.

January, 1929, an insurance agent of defendant solicited the insured for accident insurance; the agent wrote down the answers on the application blank and the insured signed it; the agent had written automobile insurance for the insured and had known him for many years and had seen him drive the Ford delivery car; the policy was issued in January, 1929, and the annual insurance premiums were paid.

May 26, 1934, the date of insured's death, two of his employees were working upon the premises of a customer, setting out plants; the insured left the shop in Winnetka in the morning in the Ford delivery car, which was loaded with geraniums, most of them to be used on this job; the accident occurred at about 6:30 o'clock in the evening when insured left this job and was going to another place to make delivery of two or three boxes of geranium plants there; apparently the delivery car skidded on a country gravel road and overturned, injuring the insured so that he died.

Defendant says that the evidence shows that while driving the Ford delivery truck the insured was performing an act that did not pertain to his occupation and hence was injured while doing an act pertaining to an occupation classified in the policy as more hazardous; that the occupation of driver of a light delivery car is classified as hazard "E" and the policy provides that the limit of liability for class "E" is $2,000; hence, defendant argues, the trial court properly directed a verdict for the smaller amount. Plaintiff argues that the quoted provision in the policy means that the smaller amount is to be paid only when the insured is

injured in doing an act not pertaining to his stated occupation, and says that driving a light delivery car with plants was an act which pertained to his occupation as a florist whose duties were both at the counter and ''supervising.''

Similar provisions in insurance policies have been considered by the courts in many cases. The identical language was under consideration in *Indemnity Ins. Co. of North America v. Sloan,* 68 F. (2d) 222. In that case the insured was classified as the general manager of a glass manufacturing company; he undertook to polish certain samples of glass work which a customer desired delivered promptly; some acid accidentally splashed in his eye, destroying the sight. The court analyzed the clause of the policy with great particularity, citing a large number of cases, and it was held that the classification intended by this provision related to a vocation and not to an occasional act aside from the insured's occupation but which pertained to such occupation; that whether the act in that case of polishing the glass pertained to the insured's occupation was a question of fact for the jury, and the court affirmed the judgment on the verdict. In *Smith v. Massachusetts Bonding & Ins. Co.,* 179 N. C. 489, the insured in his application stated that his duties were supervision of construction work of towers and pole lines for the power company; in his application he stated he was ''foreman and supervisor, having overseeing duties only''; he was on a tower instructing the linemen as to their work and in doing so cut a wire, receiving a shock that resulted in his death; it was argued by the insurance company that the act done by the insured pertained to the more hazardous occupation of ''lineman'' and the amount of liability should be reduced under a liability clause identical with that in the present policy. The court construed the policy to cover an injury caused by the doing of an

act within the line or scope of the insured's employment and held that the smaller amount of insurance should be paid only if the act is the more hazardous act of another occupation not pertaining to his own. The opinion said: "Any other construction would make the policy a deception and a snare. The one we adopt is a reasonable interpretation of the language used, and the only admissible one. Under the other construction the company would be saying to the insured: We accept your risk as a supervisor and overseer, but if you do a certain act, which is essential to the proper and full performance of your duties to your employer, you must forfeit the larger part of your insurance." In *Rex v. Continental Casualty Co.*, 96 Colo. 467, the insured was classified as general manager—office and traveling duties only; he was killed while inspecting a quarry belonging to his employer; the insurance company sought to reduce recovery to the smaller amount on the ground that the occupation of inspecting a quarry was in a more hazardous class than the occupation of the insured as stated in the policy; the court construed the provisions of the policy, holding that there was liability for the reduced amount only where the act was not incidental to the insured's general duties as stated in the policy. To the same effect was the holding in *Goetz v. Continental Casualty Co.*, 245 Ill. App. 350, where the court held that it was a question of fact whether the act done by the insured at the time of his death was related to his occupation as stated in the policy. Among the many other cases involving the same question are *Thorne v. Casualty Co. of America*, 106 Me. 274; *National Acc. Society v. Taylor*, 42 Ill. App. 97; *Fidelity Health & Accident Co. v. Holbrook*, 96 Ind. App. 457, and *Elkins v. Aetna Life Ins. Co.*, 26 F. (2d) 277. The case of *Union Mut. Acc. Ass'n v. Frohard*, 134 Ill. 228, is interesting as involving the accidental death of the insured while he was

hunting, for recreation; the insurance policy provided for payment according to the occupation of the insured, which was given as a hardware agent; it was held that the word ''occupation'' in the policy had reference to the ''vocation, profession, trade or calling'' in which the insured is engaged and did not preclude him from the performance of acts and duties which were simply incidental to his daily life in any or all occupations.

Defendant cites some cases which it is said hold to the contrary, but the facts in these cases can be distinguished. One such case is *Metropolitan Acc. Ass'n v. Hilton,* 61 Ill. App. 100, where the insured's occupation was given as ''proprietor of livery—office duties''; he was injured while driving a cab and it was held that this was not such an act as would be included in his office duties.

In *National Accident Society, etc. v. Taylor,* 42 Ill. App. 97, the court held that supervision of a farm means any work, manual or otherwise, that may be required for keeping it in order. In *Schmidt v. American Mut. Acc. Ass'n,* 96 Wis. 304, where the facts are similar to those in the instant case, it was held that supervising work is consistent with actually assisting with the work in hand. To the same effect are *Business Men's Assur. Co. of America v. Campbell,* 6 F. (2d) 540; *Fidelity Health & Accident Co. v. Holbrook,* 96 Ind. App. 457, and *Smith v. Massachusetts Bonding & Ins. Co.,* 179 N. C. 489. The conclusion from these cases is that in determining what is supervising any particular business, one must consider its character and the general manner of its regulation.

The insured, in supervising the work of his men in planting on the grounds of his customers, drove from place to place in his automobile, occasionally delivering plants to these jobs in the light delivery car; the jury could properly conclude that in so doing he was engaged in work pertaining to his occupation of super-

vising, and that the use of the light delivery car when he met his death related to and was part of his occupation as described in the policy.

It is axiomatic that if there is any part of a policy ambiguous or of doubtful meaning it must be construed most strongly against the insurance company. *Kaplan v. United States Fidelity & Guaranty Co.*, 343 Ill. 44, 48; *Monahan v. Fidelity Mut. Life Ins. Co.*, 242 Ill. 488, 493.

Other points are made which we do not think it necessary to discuss. As we have indicated, we construe the provision of the policy which reduces the liability of the company as not applying if the act pertains to the occupation of the insured. This raised a question of fact to be determined by the jury from the evidence. The jury could properly find with the plaintiff in this respect. It follows that the trial court should not have directed a verdict for the lesser amount.

The judgment is reversed and judgment is entered in this court against the defendant on the verdict of the jury for the sum of $5,000 plus interest.

*Reversed and judgment in this court.*

MATCHETT, P. J., and O'CONNOR, J., concur.